**Case No. 23-50911**

———————————————

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————————————

*DOUGLAS RAMSEY,*
*PLAINTIFF-APPELLEE*
*v.*
*SHEET PILE, LLC,*
*DEFENDANT-APPELLANT*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION
Civil Action No. 1:21-CV-00331
The Honorable Dustin M. Howell, presiding

———————————————

**PRINCIPAL BRIEF OF PLAINTIFF-APPELLEE
DOUGLAS RAMSEY**

———————————————

**SANTOYO WEHMEYER P.C.**
Renée A. Yanta
State Bar No. 00787483
*ryanta@swenergylaw.com*
Emily A. Gearhart
State Bar No. 24065871
*egearhart@swenergylaw.com*
R. William Whitmer
State Bar No. 24125456
*wwhitmer@swenergylaw.com*
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

**ATTORNEYS FOR PLAINTIFF-APPELLEE DOUGLAS RAMSEY**

**Case No. 23-50911**

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

*DOUGLAS RAMSEY,*
*PLAINTIFF-APPELLEE*
v.
*SHEET PILE, LLC,*
*DEFENDANT-APPELLANT*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION
Civil Action No. 1:21-CV-00331

The Honorable Dustin M. Howell, presiding

_____

## CERTIFICATE OF INTERESTED PERSONS

_____

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff-Appellee**:

1.    Douglas Ramsey

2

## Counsel for Plaintiff-Appellee

TEXAS SUITS, LLC
Gerrit Schultz (SBN 24084877)
*Gerrit@txsuits.com*
13750 San Pedro Avenue, Suite 810
San Antonio, Texas 78232
Telephone: (210) 503-2800
Facsimile: (210) 503-2888

and

SANTOYO WEHMEYER P.C.
Renée A. Yanta (SBN 00787483)
*ryanta@swenergylaw.com*
Emily A. Gearhart (SBN 24065871)
*egearhart@swenergylaw.com*
R. William Whitmer (SBN 24125456)
*wwhitmer@swenergylaw.com*
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201

## Defendant-Appellant:

1.    Sheet Pile, LLC

## Counsel for Defendant-Appellant

CLEVELAND KRIST PLLC
Austin Krist (SBN 24106170)
*akrist@clevelandkrist.com*
303 Camp Craft Road, Suite 325
Austin, Texas 78746
Telephone: (737) 900-7107

and

3

TERRAZAS, PLLC
Eric A. Hudson (SBN 24059977)
*ehudson@terrazaspllc.com*
Kevin James Terrazas (SBN 24060708)
*kterrazas@terrazaspllc.com*
Jennifer A. Foster (SBN 24104938)
*jfoster@terrazaspllc.com*
1001 S. Capital of Texas Highway
Austin, Texas 78746
Telephone: (512) 904-0200


SO CERTIFIED, this 1st day of August, 2024

/s/ Renée A. Yanta
Renée A. Yanta
Attorney of Record for Plaintiff-Appellee Douglas Ramsey

## IDENTIFICATION OF PARTIES AND TERMS

Plaintiff-Appellee Douglas Ramsey is referred to as "Ramsey."

Defendant-Appellant Sheet Pile, LLC, is referred to as "Sheet Pile."

Roberto Redondo Wendt, Defendant-Appellant Sheet Pile, LLC's owner, is referred to as "Wendt."

Kevin J. Terrazas, Defendant-Appellant Sheet Pile, LLC's counsel and lead appellate and trial counsel for this specific matter, is referred to as "Terrazas."

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a), Ramsey believes that oral argument is unnecessary because the dispositive issues have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the decision process would not be significantly aided by oral argument. Furthermore, the record provides overwhelming evidence of Sheet Pile's breach and damages from the same.

However, if this Honorable Court sets this case for oral argument, Ramsey respectfully requests to participate.

## TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................2

Identification of Parties and Terms...................................................................5

Statement Regarding Oral Argument ...............................................................6

Table of Contents ...............................................................................................7

Table of Authorities ........................................................................................11

Statement of Issues, Restated..........................................................................11

Issue One (Restated) ........................................................................................15

Issue Two (Restated).........................................................................................15

Issue Three (Restated).......................................................................................15

Issue Four (Restated) .......................................................................................16

Introduction......................................................................................................17

Response to Statement of Facts .......................................................................18

I.    Ramsey Provides Wendt and Sheet Pile Seven Years Of
      Exemplary Service As Wendt's Right-Hand-Man. .................................18

      A.    Ramsey and Sheet Pile enter into an employment agreement
            after six-and-a-half years without one.................................................20

      B.    Ramsey helps Sheet Pile by providing a $100,000 loan a few
            months after the Employment Agreement. ........................................22

II.   Sheet Pile Terminates Ramsey, Cheats Him Out Of Compensation,
      And Fails To Pay Back The Promissory Note. .......................................23

III.  Ramsey Sues Sheet Pile And Sheet Pile Counterclaims Against
      Ramsey...................................................................................................26

Summary of the Argument................................................................................27

Argument...........................................................................................................29

I.      No Double Recovery Lies In The District Court's Equitable Award Of Prejudgment Interest (Responsive to Issue One). .....................29

    A.      Texas law governs an award of prejudgment interest, and this Court reviews that award for an abuse of discretion. ...................30

    B.      A "double recovery" occurs only when a party recovers multiple awards for a single individual injury. .................................31

    C.      The District Court's prejudgment interest award and the contractual late fees accrue from different sources and address different purposes. ...............................................................32

    D.      Sheet Pile's single authority is unpersuasive. .....................35

II.     The District Court Properly Instructed The Jury On Prior Material Breach: The Jury Found—Based On All The Evidence—That Sheet Pile Committed A Prior Material Breach, And The District Court Correctly Upheld That Finding (Responsive to Issue Two). ..............36

    A.      To preserve objections to jury charge instructions, a party must specify the matter objected to and the grounds for the objection. ...........................................................................38

    B.      Sheet Pile waived any objection that the District Court's prior material breach instruction or Question 12 is contrary to the applicable law.............................................................38

    C.      Sheet Pile waived any objection that the prior material breach instruction did not apply as a matter of law: The plain error standard of review applies to Sheet Pile's argument on this issue. ...................................................................40

        1.      Plain error standard. .................................................41

        2.      The District Court did not commit plain error by instructing the Jury on prior material breach and submitting Question 12. ...........................................42

            a.      Ramsey's obligation to maintain Sheet Pile's confidential information does not continue the Employment Agreement.................................................43

b.     Moreover, the Employment Agreement actually contained no express obligation not to disclose confidential information. ..................................44

D.     Sheet Pile's no-evidence attack on the prior material breach instruction and the Jury's finding of the same fails: Ample evidence supported the Jury's finding that Sheet Pile committed a prior material breach. ....................................46

    1.     Federal Rule of Civil Procedure 50(a)-(b) governs legal sufficiency challenges. ....................................46

    2.     More than sufficient evidence supports the Jury's finding that Sheet Pile committed a prior material breach of the Employment Agreement. ....................................48

III.     The Evidence Supports The Jury's Finding That Sheet Pile Suffered Zero Dollars In Damages From Ramsey's Purported Breach of the Employment Agreement (Responsive to Issue Three)....................................52

A.     The Seventh Amendment prohibits Sheet Pile's requested rendition of damages. ....................................52

B.     The Jury's zero-dollar finding is well-founded: This Court should not entertain Sheet Pile's request for a new trial on breach of contract damages. ....................................53

    1.     This Court reviews a District Court's denial of a motion for a new trial for an abuse of discretion using Texas law. ....................................54

    2.     The evidence overwhelmingly supports the Jury's verdict....................................55

        a.     The evidence supports the Jury's zero-dollar award for Ramsey's purported failures in maintaining Sheet Pile's books....................................55

        b.     The evidence supports the Jury's zero-dollar award for the confidential information, training, and "insight" Sheet Pile provided to Ramsey. ....................................57

c. The evidence supports the Jury's zero-dollar award for Sheet Pile's lost revenue. ...............................59

d. The evidence supporting the Jury's zero-dollar finding is not factually insufficient. ............................60

C. *Ragsdale* has no application to Sheet Pile's arguments. .....................61

IV. The District Court Did Not Abuse Its Discretion In Refusing Sheet Pile's Request For A Permanent Injunction (Responsive to Issue Four) ....................................................................62

Conclusion ................................................................67

Certificate of Service .................................................69

Certificate of Compliance .........................................70

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644
(Tex. 2006)....................................................................................................43

*Anderson Chem. Co., Inc. v. Green*, 66 S.W.3d 43
(Tex. App.—Amarillo 2001, no pet. hist.) ........................................45

*Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410 (5th Cir. 2011)........................30

*Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048
(5th Cir. 1996)...................................................................................30, 35

*Centurytel of Chatham, LLC v. Sprint Communications LP*,
No. 09-1951, 2016 WL 4005965 (W.D. La. July 16, 2016) ..............35

*Dow Chem. v. Francis*, 46 S.W.3d 237 (Tex. 2001) ...............................................55

*DSC Comm. Corp. v. Next Level Comm.*, 107 F.3d 322 (5th Cir. 1997)................63

*Dupree v. Younger*, 598 U.S. 732 (2023) ...............................................................46

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .....................................63

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).......................................................36

*Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*,
919 F.3d 266 (5th Cir. 2019) .............................................................54

*Fair v. Allen*, 669 F.3d 601 (5th Cir. 2012)............................................................54

*Fiber Sys. Intern., Inc. v. Roehrs*, 470 F.3d 1150 (5th Cir. 2006)....................38, 41

*Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*,
401 S.W.3d 712
(Tex. App.—Houston [14th Dist.] 2013, no pet.) ............30, 31, 33, 34

*Homoki v. Conversion Servs., Inc.,* 717 F.3d 388 (5th Cir. 2013) ........................31

*Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841 (5th Cir. 2011)........................38, 40, 41

*Jones v. Bratton*, 39 F.3d 320 (5th Cir. 1994) (per curiam) ............................52, 53

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)........................36

*Matheny v. Chavez*, 593 Fed. Appx. 306 (5th Cir. 2014)........................................52

*McCann v. Tex. City Ref., Inc.*, 984 F.2d 667 (5th Cir. 1993)................................47

*Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359
(5th Cir. 2002)..................................................................................................51

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*,
134 S.W.3d 195 (Tex. 2004) ........................................................................36, 37

*McKinney ex rel. N.L.R.B. v. Creative Vision Res., L.L.C.*,
783 F.3d 293 (5th Cir. 2015) ...........................................................................30

*In re Pantalion*, 575 S.W.3d 382
(Tex. App.—Beaumont 2019, no pet.) (orig. proceeding) ...............................54

*Peaches Entm't Corp. v. Entm't Repertoire Assoc., Inc.*, 62 F.3d 690
(5th Cir. 1995).................................................................................................64

*Ragsdale v. Progressive Voters League*, 801 S.W.2d 880
(Tex. 1990)........................................................................................53, 61, 62

*Rodriguez v. McMullen*, No. 21-40593, 2023 WL 2890167
(5th Cir. Apr. 11, 2023) ...................................................................................47

*Roman v. W. Mfg., Inc.*, 691 F.3d 686 (5th Cir. 2012) ....................................50, 53

*In re Rudolph Auto., LLC*, 674 S.W.3d 289 (Tex. 2023)................................54, 61

*Russell v. Plano Bank & Tr.*, 130 F.3d 715 (5th Cir. 1997) ...................................39

*Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511
(Tex. App.—Dallas 2020, pet. denied)..............................................................43

*Sec. & Exch. Comm'n v. Blatt*, 583 F.2d 1325 (5th Cir. 1978) ...................63, 66, 67

*Seibert v. Jackson Cty., Miss.*, 851 F.3d 430 (5th Cir. 2017)................................46

*Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101 (Tex. 2018).................31

*Tandy Brands, Inc. v. Harper*, 760 F.2d 648 (5th Cir. 1985)................................39

*TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202
 (Tex. App.—Houston [1st Dist.] 2018, no pet.)..............................................32, 35

*U.S. v. Davis*, 602 F.3d 643 (5th Cir. 2010) ....................................................41

*U.S. v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009) ...........................39, 41

*U.S. v. Santos*, 589 F.3d 759 (5th Cir. 2009) .................................................41

*Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159
 (Tex. App.—El Paso 2014, pet. denied)..................................................55, 60, 61

*Wackman v. Rubsamen*, 602 F.3d 391 (5th Cir. 2010) ...................................54

*Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*,
 959 S.W.2d 182 (Tex. 1998) ......................................................................31

*Williams v. Hoyt*, 556 F.2d 1336 (5th Cir. 1977)............................................39

*Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820
 (S.D. Tex. 2023)........................................................................................64

*In re Zimmer, Inc.*, 451 S.W.3d 893
 (Tex. App.—Dallas 2014, no pet.) (orig. proceeding) .......................................55

**Statutes**

Tex. Fin. Code § 304...................................................................................31

Tex. Fin. Code § 304.101.............................................................................31

**Rules**

Fed. R. Civ. P. 50 ..................................................................................... 47

Fed. R. Civ. P. 50(a)...............................................................................46, 47

Fed. R. Civ. P. 50(a)(2)...........................................................................46, 47

Fed. R. Civ. P. 50(b) ..............................................................................46, 47

FED. R. CIV. P. 51 ................................................................38, 39, 40

FED. R. CIV. P. 51(c)(1).................................................................38

FED. R. CIV. P. 51(d) .....................................................................38

FED. R. CIV. P. 51(d)(2)..................................................................41

## STATEMENT OF ISSUES, RESTATED

### ISSUE ONE (RESTATED)

When a District Court awards contract damages based on factually supported jury's damages findings and equitable prejudgment interest based on common law principles, does the District Court abuse its discretion?

### ISSUE TWO (RESTATED)

Did the District Court err by upholding the Jury's finding of prior material breach by Sheet Pile that excused Ramsey's purported breach when:

- Sheet Pile waived all objections to the prior material breach instruction other than factual insufficiency;

- Well-established Texas employment law confirms Ramsey's conduct of abiding by a confidentiality agreement's narrow terms is not continuation of an employment agreement Sheet Pile indisputably terminated;

- And the Jury had ample evidence establishing that Sheet Pile breached the employment agreement first?

### ISSUE THREE (RESTATED)

The Seventh Amendment prohibits federal courts from increasing a jury's damages finding. Considering this prohibition, did the District Court abuse its discretion when it entered Judgment based on the Jury's finding Sheet Pile suffered

$0 in contract damages, especially when abundant evidence supports the Jury's finding and there is no evidence Sheet Pile suffered the $900,000 it claims on appeal?

### ISSUE FOUR (RESTATED)

When Sheet Pile offered zero evidence that Ramsey poses an imminent threat of disclosing Sheet Pile's confidential information, did the District Court abuse its discretion in denying Sheet Pile's permanent injunction application?

## INTRODUCTION

The Jury considered hours of testimony and voluminous documentary evidence presented during the five-day trial. At the conclusion of its deliberations, the Jury found:

- Sheet Pile breached a promissory note and security agreement it entered into with Ramsey;

- Sheet Pile committed a material breach of its employment agreement with Ramsey by failing to pay Ramsey his final paycheck; and

- Ramsey also breached the employment agreement, but his purported breach occurred after Sheet Pile's prior material breach, thereby excusing Ramsey's purported breach.

ROA.1975-76. The District Court agreed with the Jury's findings and entered a Final Judgment, awarding judgment in accordance with the Jury's verdict. ROA.2270-73.

Sheet Pile now urges this Court to ignore the Jury's work and the District Court's rulings. Notably, Sheet Pile does not dispute the Jury's findings Sheet Pile breached the promissory note and security agreement and the employment agreement. And it is undisputed Sheet Pile failed to pay Ramsey money it owed him.

Still, on appeal, Sheet Pile spins its own version of the story. Moreover, Sheet Pile ignores the clear Texas law underlying the Final Judgment, the substantial evidence supporting the Jury's findings, and its own critical procedural errors that

17

gut its current arguments. Ramsey respectfully submits that Sheet Pile's appeal fails, and the Final Judgment should be affirmed.

**RESPONSE TO STATEMENT OF FACTS**

**I.     Ramsey Provides Wendt and Sheet Pile Seven Years Of Exemplary Service As Wendt's Right-Hand-Man.**

Ramsey and Wendt share a long history, and until Sheet Pile took advantage of Ramsey, their history was peaceful and productive. Before Wendt employed Ramsey, he was a contractor for Wendt through the City Lights Group. ROA.2856. At the City Lights Group, Ramsey provided management and financial services for Wendt's businesses. ROA.2858. However, Ramsey's time with City Lights Group was short for a good reason. Wendt believed that Ramsey was doing an exceptional job for his businesses and was a "good professional match." ROA.2858. So, in July 2013, Wendt offered Ramsey the opportunity to work directly for him as his businesses' chief financial officer (CFO). ROA.2858-59. Wendt therefore hired Ramsey as a contractor for Sempe, Inc. ("Sempe"), one of Wendt's companies. ROA. 2859-60.

Ramsey was Wendt's jack of all trades. He served as the CFO and business manager for Wendt's various companies, including Sheet Pile and Sheet Pile's predecessor, PilePro Steel LP. ROA.2859-61, 63, 86-87. In addition, Ramsey performed the following duties:

- Paying Wendt's company bills (ROA.2861);

18

- Ensuring Wendt's companies' taxes were paid (ROA.2861-62);

- Compiling end-of-year financials for a CPA (ROA.2862);

- Purchasing raw materials for Wendt's companies (ROA.2862);

- Selling Wendt's companies' products to customers (ROA.2862);

- Invoicing and collecting payments from customers (ROA.2862);

- Managing human resources (ROA.2887);

- Managing accounting (ROA.2862); and

- Paying employees and contractors (ROA.2872).

Ramsey's compensation mostly remained the same while working for Wendt's companies or Sheet Pile. When Wendt hired Ramsey as a contractor for Sempe in July 2013, Sempe paid Ramsey $9,000 a month. ROA.2856, 2864. In September 2014, Wendt increased Ramsey's total compensation to $10,000 a month. ROA.2864, 3089-90. Wendt also made Ramsey a formal employee of one of his companies—Pilepro Steel LP ("Pilepro Steel")—and gave him a complete employee benefits package. ROA.2864, 3089-90.

Wendt split Ramsey's compensation between two of his companies. Wendt paid Ramsey $5,000 a month from the Pilepro Steel payroll and $5,000 a month as a contractor for Sempe. ROA.2864-65. This split-payment arrangement persisted until the end of 2018 when Sheet Pile (f/k/a iSheetpile, LLC) started paying Ramsey

19

$10,000 a month as its full employee. ROA.2868.[1] From August 2014 until his termination, Wendt or Sheet Pile compensated Ramsey $10,000 monthly. ROA.2866.

Ramsey's tenure with Wendt's companies and Sheet Pile was characterized by loyalty and dedication. Sheet Pile and Wendt's companies "ebbed and flowed in cash . . . ." ROA.2869. Sheet Pile and Wendt's companies would "live and die by . . . very large purchase orders . . . ." ROA.2869. Because of this, Ramsey was seldom paid on time. ROA.2868. Before paying himself, Ramsey would often prioritize first paying the companies' staff or other bills. ROA.2871-72. Ramsey often put off funding his reimbursements for work-related expenses because of cash flow problems. ROA.2891. Undoubtedly, these late payments caused Ramsey and his family much stress. ROA.2871.

### A. Ramsey and Sheet Pile enter into an employment agreement after six-and-a-half years without one.

In Summer 2019, Wendt believed it was time to enter written employment agreements with his employees. ROA.2878-79. And so, Ramsey and Sheet Pile entered into a written employment agreement (the "Employment Agreement") on August 27, 2019. ROA.2879, 3903-06. Under the Employment Agreement, Ramsey retained the same role and duties as Sheet Pile's CFO and business manager.

---

[1] Sheet Pile changed its name from "iSheetPile, LLC" while Ramsey was an employee. ROA.3215-16.

ROA.2882. Ramsey also retained his prior compensation of $10,000 a month plus benefits. ROA.2888.

Notably, the Employment Agreement provided:

- Reimbursement for Ramsey's reasonable expenses arising out of his employment (ROA.3903);

- Sheet Pile may terminate Ramsey without notice "for sufficient cause" (ROA.3904); and

- Sheet Pile may terminate Ramsey without "sufficient cause," but that it must compensate him "an amount required by the Employment Standards of Act of 2000 . . . " (ROA.3904).

The Employment Agreement also imposed *new* duties on Ramsey, including a non-competition agreement. ROA.2904. Under this new provision, Ramsey could not:

- Hire any Sheet Pile employees or Wendt company employees for two years following termination (ROA.3904);

- Solicit business from Sheet Pile's or Wendt companies' customers for two years following termination (ROA.3904);

- Accept employment from a third party in the same industry as Sheet Pile while Sheet Pile employed him (ROA.3905).

There was also a new "non-disclosure" provision. It states that Ramsey "acknowledges" Sheet Pile will provide him access to "highly confidential, trade secret, and proprietary information" that "would not be provided without" the Employment Agreement. ROA.3905. The provision also mandated that Ramsey notify Sheet Pile's attorney, Terrazas, if any third party attempted to offer him employment or "communicate with him about" Sheet Pile, Wendt, or Wendt's companies. ROA.3905.

Finally, the Employment Agreement provided a new one-time bonus provision. Ramsey would receive a $44,000 bonus upon helping to deliver a $1-1,500,000 purchase order to a customer. ROA.2892, 3903. The terms of this provision were straightforward: Ramsey would receive a $44,000 bonus after Sheet Pile delivered "eight truck loads [sic] of products" to the Roll Form Group. ROA.3903. Wendt included this provision because this purchase order would require Ramsey to invest significant extra effort to help complete the order. ROA.2892. The large order required "lots of work, a lot of travel [between Austin, Texas and New Hampshire], a lot of extra effort on several people to make it happen." ROA.2914-15.

### B.    Ramsey helps Sheet Pile by providing a $100,000 loan a few months after the Employment Agreement.

As he had done before, Ramsey loaned $100,000 to Sheet Pile in November 2019. ROA.2953. This loan was not sourced from Ramsey's savings account.

Rather, Ramsey took a $100,000 personal line of credit secured by his family home to make the loan. ROA.2956, 3017. Wendt had approached Ramsey about loaning funds to Sheet Pile, representing the company needed quick cash as a bridge loan. ROA.2958, 2965-67, 3077. At Wendt's request, Ramsey wired the $100,000 to Sheet Pile's bankruptcy trustee. ROA.2959.

Sheet Pile and Ramsey memorialized the loan by a "Secured Promissory Note," dated November 21, 2019 (the "Promissory Note"). ROA.3891. The Promissory Note provided for a one-time $10,000 interest charge on the $100,000. ROA.3891. The ostensive maturity date on the Promissory Note was December 21, 2020. ROA.3891. However, "2020" was a typographical error. ROA.3069, 76-78. The parties had intended for the Promissory Note to mature in "a couple of months," not a year. ROA.3069, 76-78. However, Ramsey realized the error and chose not to contest the maturity date as stated in the Note. ROA.3069, 76-78.

The Promissory Note was secured by a November 19, 2019, security agreement (the "Security Agreement") between Ramsey and Sheet Pile. ROA.3895-3902. The Security Agreement listed Sheet Pile's open receivables, inventory, and equipment as collateral for the Promissory Note. ROA.3902.

## II.    Sheet Pile Terminates Ramsey, Cheats Him Out Of Compensation, And Fails To Pay Back The Promissory Note.

In the meantime, Ramsey's effort with Roll Form paid off—at least for Sheet Pile. Sheet Pile had delivered eight truckloads of products to Roll Form, triggering

23

the bonus for Ramsey as provided in the Employment Agreement. ROA.2918-36, 3903; *see also* ROA.3909-18 (bills of lading showing deliveries to Roll Form). So, on December 18, 2019, Ramsey inquired about the status of his $44,000 contractual bonus. ROA.2941-45, 3907. While Ramsey was certain he was entitled to the bonus, no one responded to his inquiry. ROA.2945. Sheet Pile's silence was an ominous sign of what was coming.

The following day, Ramsey discovered he had no access to his work email with Sheet Pile. ROA.2945-46. At first, Ramsey thought there was just a technical glitch. ROA.2946. He attempted to contact IT support and Wendt regarding his email access. ROA.2946-47. Wendt did not reply, but Sheet Pile's IT support informed Ramsey that Wendt had terminated his access to Sheet Pile emails. ROA.2947. After this concerning revelation, Ramsey contacted Terrazas about the sudden break in communication.[2] ROA.2947. But Terrazas gave Ramsey "a nonanswer" and suggested that he would "see what was going on . . . ." ROA.2947.

Ramsey "had no idea what was going on" during this period. ROA.2899. But in the meantime, Ramsey still had to run Sheet Pile's business, which he did despite having no company email or any communication with Wendt. ROA.2898-99. It was Terrazas who finally informed Ramsey that he would be terminated effective

---

[2] The District Court expressed concerns about Terrazas serving as Sheet Pile's lead trial counsel because of his deep involvement with Sheet Pile's various breaches of contract against Ramsey. ROA.2991-94.

24

December 31, 2019. ROA.2899. Terrazas gave Ramsey no apparent reason for his termination. ROA.2899-2901. Because Sheet Pile terminated Ramsey effective December 31, 2019, Ramsey was entitled to his entire pay for December 2019—$10,000. ROA.3903-04. Ramsey's last paycheck of $5,000 was due January 10, 2020. ROA.3082. But January 10, 2020, came and went without Ramsey receiving a final paycheck. ROA.3083.

Still reeling from his sudden termination, Ramsey emailed Terrazas about his pay for the remainder of December 2019, his $100,000 loan, and the unpaid $44,000 bonus. ROA.3065-66. After several back-and-forth emails with Terrazas, Sheet Pile took several blatantly false positions:

- Ramsey's salary before the Employment Agreement was $60,000 a year, not $120,000 (ROA.3083);

- Ramsey was not entitled to half of his December 2019 salary—$5,000—because he was purportedly overpaid for 2019 (ROA.3083);

- Ramsey was not entitled to his $44,000 bonus because Wendt believed that only four "truckloads" of materials were delivered to Roll Form (ROA.3088-89);

- Sheet Pile would not pay back the $100,000 due under the Promissory Note as it had promised Ramsey (ROA.3099-3100).

25

Defeated by Sheet Pile's duplicity, Ramsey still returned all Sheet Pile documents, electronic files, and property in his possession within two weeks of his termination. ROA.3096-97.

Without employment, Ramsey started a consulting business offering services to a wide variety of industries.[3] ROA.2854-55, 3204-05. But Ramsey did not attempt to hire Sheet Pile or Wendt company employees. ROA.2902. He also did not solicit any of Sheet Pile's current clients or disseminate any of Sheet Pile's confidential or proprietary information. ROA.2903, 2908-09.

Months later, the Promissory Note's maturity date—December 21, 2020—came and went without Sheet Pile's payment. ROA.3002, 3131-34. In fact, Sheet Pile also failed to pay Ramsey the: (1) $10,000 flat-rate interest or (2) finance charges (other than $290 in December 2019) Ramsey incurred to supply the loan's principal. ROA.3019, 3131-34. Since Sheet Pile did not pay the principal by the maturity date, late fees began (and continue) to accrue after December 21, 2020. ROA.3131-34.

## III.    Ramsey Sues Sheet Pile And Sheet Pile Counterclaims Against Ramsey.

Because of Sheet Pile's breaches of the Promissory Note, Employment Agreement, and Security Agreement, Ramsey sued Sheet Pile for breach of contract and fraud. ROA.444-52. In return, Sheet Pile filed a counterclaim against Ramsey

---

[3] Only one of his first clients was in the sheet piling industry. ROA.3206.

asserting a litany of claims: breach of the Employment Agreement, fraud, breach of fiduciary duty, unjust enrichment, tortious interference, trade secrets violations, and negligence. ROA.78-92. Sheet Pile also requested injunctive relief against Ramsey. ROA.78-92.

The parties tried their claims to a jury on May 15 to May 19, 2023, before Magistrate Judge Dustin M. Howell of the Austin Division of the Western District of Texas. ROA.1, 17-19. The Jury found for Ramsey on his breach-of-contract claims, finding that Sheet Pile breached both the Employment Agreement and the Promissory Note. ROA.2271-73. It awarded Ramsey $160,000 for Sheet Pile's breaches.[4] ROA.2271-73. The Jury found for Sheet Pile on its negligence claim against Ramsey and awarded $38,000 to Sheet Pile for these purported damages. ROA.2271-73. The District Court granted Ramsey both pre- and post-judgment interest on all his damages. ROA.2271-73. The District Court denied all other relief, including Sheet Pile's requested injunction. ROA.2271-73. Sheet Pile then filed this instant appeal. ROA.2750.

## SUMMARY OF THE ARGUMENT

The District Court's Final Judgment should be upheld. Sheet Pile fails to provide any valid basis for disturbing the Jury's well-supported findings. Similarly,

---

[4] Sheet Pile **does not appeal** the Jury's finding that it breached the Promissory Note or that Ramsey is entitled to the Promissory Note's principal. *See generally* Sheet-Pile-Brief at 1-37.

Sheet Pile's arguments—some of which are waived—fail to establish any error by the District Court in issuing its Final Judgment.

First, the Final Judgment's award of $155,878.47 in damages for Sheet Pile's breach of the Promissory Note and prejudgment interest does not award Ramsey a double recovery. This award encompasses separate damages for distinct injuries Ramsey suffered from Sheet Pile's breach of the Promissory Note, as allowed under the applicable Texas law. Sheet Pile ignores this vital point, misconstruing the facts to argue that the contractual late fees and equitable prejudgment interest here cover the same injury: They do not.

Second, the District Court correctly instructed the Jury on prior material breach. Sheet Pile waived any objection to this instruction other than legal insufficiency. As such, the plain error standard of review applies to Sheet Pile's new, post-verdict argument: That prior material breach cannot apply because Ramsey continued to perform the Employment Agreement by adhering to his confidentiality obligations. Not only is this argument waived, but it is also wrong under the law. Sheet Pile's only live objection—legal insufficiency—also fails. The Jury had more than sufficient evidence supporting its prior material breach finding against Sheet Pile.

Third, the District Court correctly entered judgment on the Jury's finding of zero dollars in damages caused by Ramsey's purported breach of the Employment

28

Agreement. Sheet Pile's request that this Court disturb the District Court's award and increase it exponentially to approximately $900,000 runs contrary to federal law. Sheet Pile's request for a new trial on damages also fails. The evidence overwhelmingly supports the Jury's conclusion that Sheet Pile suffered zero dollars in damages.

Fourth, the District Court did not abuse its discretion in denying Sheet Pile's application for permanent injunction. Sheet Pile failed to provide any evidence of a requisite element of injunctive relief: An imminent threat of future disclosure by Ramsey of Sheet Pile's confidential information. Without evidence of this necessary element, the District Court correctly denied Sheet Pile's request for injunctive relief.

Ramsey asks this Court to affirm the District Court's Final Judgment in its entirety.

## ARGUMENT

### I.   No Double Recovery Lies In The District Court's Equitable Award Of Prejudgment Interest (Responsive to Issue One).

Sheet Pile claims the District Court's award to Ramsey of the damages the Jury found because Sheet Pile breached its obligations under the Promissory Note ($155,878.47) and prejudgment interest is a "double recovery." Sheet-Pile-Brief at 17-21. Sheet Pile argues Ramsey should not recover both $36,115.09 in late fees that accrued under the Promissory Note and prejudgment interest. *Id.* Sheet Pile urges

29

this Court to delete the $36,115.09 in late fees from the Final Judgment. *Id.* This argument is wrong on the facts and the law.

A. **Texas law governs an award of prejudgment interest, and this Court reviews that award for an abuse of discretion.**

In a diversity case, "Texas law governs the award of prejudgment interest." *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011). A district court's award of prejudgment interest is reviewed for an abuse of discretion. *Id.* A District Court abuses its discretion when it: "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *McKinney ex rel. N.L.R.B. v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 298 (5th Cir. 2015).

There are two sources of prejudgment interest in Texas law. *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The first is "general principles of equity;" the second is "an enabling statute." *Id.* When a claim does not fall into "any enabling statute," equitable principles will determine the propriety of prejudgment interest. *Id.* Prejudgment interest is awarded "***as a matter of course* when**" a jury finds a claimant's damages accrued before judgment. *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996) (citing Texas law) (internal quotations omitted and emphasis added). The District Court should ultimately award

prejudgment interest "in all but exceptional circumstances." *Id.* (citing Texas law) (internal quotations omitted).

Here, Ramsey's Promissory Note claim does not qualify for possible prejudgment interest under an "enabling statute."[5] Accordingly, the general principles of equity determine if the District Court abused its discretion in awarding Ramsey prejudgment interest. *Hand & Wrist Ctr.*, 401 S.W.3d at 717.

## B.    A "double recovery" occurs only when a party recovers multiple awards for a single individual injury.

Under Texas law,[6] a final judgment may not award one party duplicative damages for the same injury. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). Otherwise, that judgment provides a prohibited double recovery. *Id.* To determine if a judgment provides a double recovery, "the fundamental consideration . . . is whether the plaintiff has suffered a single, indivisible injury—not the causes of action the plaintiff asserts." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018). However, when a remedy "compensates for . . . separate and distinct" injuries, there is no double

---

[5] *See* TEX. FIN. CODE § 304.101 (stating prejudgment interest under chapter 304 of Texas Finance Code only applies to "wrongful death, personal injury, or property damage" cases); ROA.434-52 (Ramsey's live complaint).

[6] Texas law determines if a judgment creates a double recovery. *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 398 (5th Cir. 2013) (Stating in diversity action, state law "governs what damages are available for a given claim and the manner in which those damages must be proved.").

recovery. *TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 209 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

### C. The District Court's prejudgment interest award and the contractual late fees accrue from different sources and address different purposes.

In the Promissory Note, Sheet Pile agreed to pay an additional $1,000 monthly as interest on any unpaid principal or interest after the maturity date. ROA.3891. So, if Sheet Pile had failed to pay its outstanding balance for twelve months, it would owe Ramsey an additional $12,000. ROA.3891. This arms-length contractual penalty to which Sheet Pile contractually agreed penalizes Sheet Pile for nonpayment and late payments. ROA.3891. This provision reflects the parties' intent that Sheet Pile promptly pay the Promissory Note, ***without needing and regardless of judicial intervention***. ROA.3891. The contractual late fees Sheet Pile agreed to therefore remunerate Ramsey if Sheet Pile fails to pay as it agreed under the Promissory Note and encourage Sheet Pile to pay the Promissory Note ***before or at*** maturity. ROA.3891.

The award of contractual late fees arises from the Jury's findings that Sheet Pile breached its duties under the Promissory Note. ROA.1966, 76. The breach of that obligation triggered Sheet Pile's contractual obligation each and every month to pay an additional $1000 to Ramsey. ROA.3891. That monthly recurring and continuing obligation only terminates when Sheet Pile pays its entire debt owed

under the Promissory Note.[7] ROA.3891. As such, the Jury's Promissory Note damages finding properly includes the late fees that accrued each month from the date the Promissory Note matured. ROA.3133-34 (Ramsey describing accrual of Sheet Pile's late fees); *see also* ROA.1976 (Jury verdict charging Jury compensate Ramsey for damages from Sheet Pile's "failure to comply with the" Note). These are amounts due under the Promissory Note, which Sheet Pile itself drafted and agreed to.

On the other hand, the District Court determined whether to award Ramsey prejudgment interest. *Hand & Wrist Ctr.*, 401 S.W.3d at 717 (stating award of prejudgment interest is equitable award from court). That award arises from equitable principles and is focused on the equities of the circumstances. *Id.* Accordingly, the District Court's prejudgment interest award reflects the Court's equitable determination to compensate Ramsey for "the lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Id.* at 718 (internal quotations omitted). For example, the District Court considered:

- Ramsey had to file suit, litigate, and proceed through a jury trial before Sheet Pile would finally concede it owes Ramsey under the Promissory Note (ROA.444-52);

---

[7] These accrued late fees had not been paid at the time of trial. ROA.3133-34.

- The funds Ramsey allowed Sheet Pile to borrow were from his own personal line of credit secured by his family home (ROA.2956);

- Sheet Pile had led Ramsey to believe the Promissory Note would mature in a couple of months, not thirteen months (ROA.3069, 76);

- Sheet Pile had refused to pay the $10,000 flat-rate interest charge (ROA.3131-34);

- Other than $290 in December 2019, Sheet Pile had not paid the monthly finance charges Ramsey personally incurred from using his personal line of credit to make the loan to Sheet Pile (ROA.3019);

- Ramsey could not foreclose on the Sheet Pile-owned collateral listed in the Security Agreement (ROA.3011);

- Sheet Pile had not paid the accrued late charges at the time of trial (ROA.3133-34).

The District Court's award of prejudgment interest reflects an equitable recovery on the full "money due" under the Promissory Note. *Hand & Wrist Ctr.*, 401 S.W.3d at 718. Here, that includes the late fees that accrued each month through the date of the judgment. ROA.3133-34 (Ramsey describing accrual of Sheet Pile's late fees). The District Court did not abuse its discretion in awarding prejudgment interest.

The Promissory Note and prejudgment interest awards compensate for distinct injuries—one contractual and one equitable. The awards arise from different findings—one from the jury and one from the Judge. Accordingly, awarding the contractually accrued late fees and equitable prejudgment interest are not impermissible double recoveries. *TMRJ Holdings*, 540 S.W.3d at 209.

**D.     Sheet Pile's single authority is unpersuasive.**

Sheet Pile cites one case to support its assertion that an award of late payment damages and prejudgment interest is a double recovery. Sheet-Pile-Brief at 20. But, *Centurytel of Chatham, LLC v. Sprint Communications LP,* No. 09-1951, 2016 WL 4005965 (W.D. La. July 16, 2016) is not applicable to the District Court's award of prejudgment interest. *Centurytel* is a Louisiana District Court's ruling and order declining to impose prejudgment interest as "costs" in a federal question case. *Id.* at *5. *Centurytel* does not analyze the propriety of awarding prejudgment interest under Texas law. *Id.* at *5-*7. Accordingly, *Centurytel* does not explore the true issue raised by Sheet Pile's appeal: Does a judge applying ***Texas law*** abuse his or her discretion by awarding prejudgment interest on the full amount of Ramsey's contract damages?[8] *Centurytel* provides no persuasive or authoritative support for Sheet Pile's assertions.

---

[8] *Centurytel* even suggests that prejudgment interest may be proper for Ramsey's damages. *Compare Centurytel*, No. 09-1951, 2016 WL 4005965 at * 6 ("Further, as a matter of equity, this is not a case where an award of prejudgment interest on attorneys' fees should be awarded, so as to further the promotion of, for example, civil rights litigation.") *with Bituminous Cas. Corp.*, 75

The District Court's damages award to Ramsey for Sheet Pile's breach of the Promissory Note and prejudgment interest is no double recovery and is no error. This Court should not disturb either award, and the District Court's Final Judgment should be affirmed.

**II.    The District Court Properly Instructed The Jury On Prior Material Breach: The Jury Found—Based On All The Evidence—That Sheet Pile Committed A Prior Material Breach, And The District Court Correctly Upheld That Finding (Responsive to Issue Two).**

Texas law is well established that a prior material breach of a contract excuses the non-breaching party from further performance under the contract.[9] *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (explaining "fundamental principle of contract law" that when one party materially breaches a contract, the other contractual party is discharged or excused from further performance). Here, ample evidence supported the requested jury-charge instruction and question on Sheet Pile's prior material breach of the Employment Agreement. *Infra*, ARGUMENT § II(D).

The District Court instructed the Jury: "A failure to comply by a party is excused by the other party's previous failure to comply with a material obligation of

---

F.3d at 1057 (stating that equitable prejudgment interest should be awarded in Texas diversity cases "in all but exceptional circumstances").

[9] Because this is a diversity case, Texas law applies to the breach of contract claims and issues. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

the same agreement." ROA.1966. Sheet Pile has never argued this instruction (the "prior material breach instruction") misstates the applicable law.[10] ROA.2286-99, 2730-38, 3720-23; Sheet-Pile-Brief at 21-28. Instead, Sheet Pile contends the prior material breach instruction and corresponding jury charge question ("Question 12") does not apply based on the evidence presented. Sheet-Pile-Brief at 21-28. Sheet Pile uses incorrect legal standards, relies on waived arguments, misrepresents the evidence, and wholly discounts the jury's findings to make this argument. *Infra*, ARGUMENT § II(A)-(D).

Sheet Pile premises its attack on the District Court's issuance of the prior material breach instruction and Question 12 on two primary arguments:

- The prior material breach instruction lacked any valid legal basis because Ramsey's alleged continuation of the contract excused Sheet Pile's prior material breach (Sheet-Pile-Brief at 26-28); and

- No evidence supported the prior material breach finding (*id.* at 22-26).

Sheet Pile's attacks fail. Sheet Pile is unable to establish that the District Court erred in submitting to the Jury the prior material breach instruction and Question 12.

---

[10] Indeed, the District Court's language used in its jury instructions comports with well-established Texas law. *Mustang Pipeline*, 134 S.W.3d at 196.

**A.**    **To preserve objections to jury charge instructions, a party must specify the matter objected to and the grounds for the objection.**

Federal Rule of Civil Procedure 51 governs objections to jury charge instructions. FED. R. CIV. P. 51. To preserve error regarding jury instructions, a party must object on the record, stating "distinctly the matter objected to and the grounds for the objection." *Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 844-45 (5th Cir. 2011) (citing FED. R. CIV. P. 51(c)(1)). The party must object to the specific ground raised on appeal: A general objection to the instructions as a whole or an objection on a different ground fails to preserve the objection. *Fiber Sys. Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1158 (5th Cir. 2006) (defendant waived appellate argument that jury charge excluded loss-of-use instruction where it objected on a different ground at trial). Not only must the party specifically state its objection, but it must object timely: At the time appointed by the district court out of the jury's hearing and before delivery of the instructions and arguments. *Jimenez*, 660 F.3d 845. Strict adherence to these mandatory requirements is necessary to preserve error regarding jury charge instructions. FED. R. CIV. P. 51(d).

**B.**    **Sheet Pile waived any objection that the District Court's prior material breach instruction or Question 12 is contrary to the applicable law.**

Sheet Pile's only recorded jury charge objections were woefully inadequate under Rule 51. The District Court properly heard objections to the jury charge before the Jury received the charge. ROA.3720-23. This was the time for Ramsey and Sheet

Pile to voice any objections to the instructions and charge. Sheet Pile ostensibly exercised its right, asserting the following objection to Question 12:

> Questions 12 and 16,[11] **lack evidence**, are **in contravention of the controlling law**, as these are state law claims, and they are both **immaterial and irrelevant** and should not be in the jury charge.

ROA.3722-23 (emphasis added). Sheet Pile's mere recitation of boilerplate objections without explaining how they apply fails to meet Rule 51's specificity requirement. *Williams v. Hoyt*, 556 F.2d 1336, 1340 (5th Cir. 1977).

Indeed, Sheet Pile's murky objection is similar to the one analyzed by the Fifth Circuit in *Hoyt*. *Id.* The objecting party in *Hoyt* broadly objected that the charge was "fundamentally wrong" and "not a fair statement of the law." *Id.* The Fifth Circuit deemed the objecting party's "sweeping generalization" insufficient to preserve error. *Id.* As in *Hoyt*, Sheet Pile's vague and general objection was simply not specific enough to apprise the District Court of its problem with the charge. *See Russell v. Plano Bank & Tr.*, 130 F.3d 715, 719-20 (5th Cir. 1997) (determining plaintiff's global objection to instructions based on denial of plaintiff's requested instructions failed to satisfy Rule 51's requirements); *U.S. v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (explaining party must raise alleged error to allow district court opportunity to correct itself); *Tandy Brands, Inc. v. Harper*, 760 F.2d

---

[11] Sheet Pile lumped Question 12 together with Question 16—prior material breach regarding the Security Agreement—asserting the same boilerplate, vague objections to both. ROA.3722-23. Sheet Pile does not address Question 16 in its appeal.

648, 654 (5th Cir. 1985) (objection to court's jury instruction was "not sufficiently specific to bring into focus the precise nature of the alleged error").

Sheet Pile's stated objection ***does not explain why*** Question 12 is allegedly "in contravention of the controlling law" or "immaterial and irrelevant." Accordingly, Sheet Pile has failed to preserve any challenge to Question 12, and its related instruction based on the controlling law, materiality, or relevancy.

On appeal, Sheet Pile attempts to provide the requisite explanation, but it is too late. Sheet Pile waited until after the Jury's verdict to assert its new argument: The prior material breach instruction purportedly lacked a legal basis because Ramsey's alleged continuation of the contract excused Sheet Pile's prior material breach. Sheet-Pile-Brief at 26-28. Not only is this argument wrong, but it is also waived. *Infra*, ARGUMENT § II(C).

Sheet Pile's sole remaining objection is its legal sufficiency complaint. But there is more than ample evidence supporting the Jury's prior material breach finding against Sheet Pile. *Infra*, ARGUMENT § II(D).

**C.** **Sheet Pile waived any objection that the prior material breach instruction did not apply as a matter of law: The plain error standard of review applies to Sheet Pile's argument on this issue.**

Whether a party preserves its objections to a jury charge instruction determines the standard of review. *See Jimenez*, 660 F.3d at 844-45 (explaining Rule 51 governs Fifth Circuit's standard of review for challenges to jury instructions).

40

Where a party makes a specific and timely objection, the Fifth Circuit reviews the objection: "[U]nder an abuse of discretion standard, affording the trial court substantial latitude in describing the law to the jurors." *U.S. v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009) (internal quotations omitted). In stark contrast, a court's review is limited to plain error when the movant has failed to preserve its objection—as Sheet Pile failed here. *Jimenez*, 660 F.3d at 845.

### 1.      Plain error standard.

In reviewing jury instructions for plain error, the Fifth Circuit is "exceedingly deferential to the trial court." *Fiber Sys. Intern*, 470 F.3d at 1158. To satisfy plain error review, Sheet Pile must show the District Court's error was "plain and affects [Sheet Pile's] substantial rights." *Mondragon-Santiago*, 564 F.3d at 361. An error affects substantial rights if it "affected the outcome of the district court proceedings." *U.S. v. Davis*, 602 F.3d 643, 647 (5th Cir. 2010). Even if Sheet Pile could establish this—which it cannot—this Court has discretion to correct the forfeited error only: "[I]f it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* "If the unpreserved error does not meet this demanding standard, [the Fifth Circuit Court] has no authority to correct it." *Jimenez*, 660 F.3d at 845; *see also* Fed. R. Civ. P. 51(d)(2).

41

**2.      The District Court did not commit plain error by instructing the Jury on prior material breach and submitting Question 12.**

Sheet Pile argues: "[A]s a matter of law, there was no basis upon which the district court could have issued a prior material breach instruction." Sheet-Pile-Brief at 26. According to Sheet Pile, a prior material breach fails to excuse non-performance if the later-breaching party elects to continue the contract after the prior material breach. Sheet-Pile-Brief at 26-27. Sheet Pile cites a slew of cases for this unremarkable position. *Id.* Sheet Pile then argues that Ramsey (as the later-breaching party) continued the Employment Agreement long past Sheet Pile's prior material breach (its failure to pay Ramsey for working for Sheet Pile from December 16-30, 2019). Sheet-Pile-Brief at 26, 28. The sole "evidence" Sheet Pile uses to claim Ramsey continued the Employment Agreement is the evidence Ramsey abided by his duty to maintain the confidentiality of Sheet Pile's information after his termination. *Id*.

While Sheet Pile's recitation of the law may be correct, it has zero bearing here: Ramsey's protection of Sheet Pile's confidential information after his termination did not constitute continued performance of the Employment Agreement.[12]

---

[12] This argument is not just legally wrong, it is nonsensical: The evidence is undisputed Sheet Pile terminated the Employment Agreement on December 31, 2019. ROA.2866, 2898-99, 2902, 3096. Sheet Pile's own attorney told Ramsey he was terminated as of that date. ROA.2899. And the evidence is undisputed Ramsey forcibly stopped working for Sheet Pile on December 31st. No one

### a. Ramsey's obligation to maintain Sheet Pile's confidential information does not continue the Employment Agreement.

Any confidentiality obligation within Ramsey's Employment Agreement existed as a separate, stand-alone agreement supported by mutual consideration. *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 525-26 (Tex. App.—Dallas 2020, pet. denied) (finding employer's provision of confidential information constituted sufficient consideration allowing for enforcement of confidentiality provision after employment terminated). The obligation becomes enforceable when "the employer performs the promises made in exchange" for the employee's promise to keep information confidential. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 646 (Tex. 2006).

By the time Ramsey left Sheet Pile, the confidentiality agreement had become an enforceable contract secured by performance from both sides. *See id.* (finding that employer provides consideration through performance under confidentiality agreement). Sheet Pile continued to employ Ramsey, allowing him access to confidential information necessary for his job performance. ROA.3471-72. In

---

has ever argued Sheet Pile owed Ramsey any duty under the Employment Agreement after December 31st, other than to pay Ramsey for the work he had already performed. ROA.2866 (Ramsey concedes his employment for Sheet Pile terminated on December 31st), ROA.3080 (Ramsey asking for his final Sheet Pile paycheck), ROA.3085-87 (Ramsey seeking payment for bonus due from work prior to December 31st). The factual premise of Sheet Pile's argument directly contradicts the record and Sheet Pile's own position at trial.

43

exchange, Ramsey agreed to maintain the confidentiality of the information provided. ROA.452-56. Ramsey's duty to abide by the confidentiality provision's terms survived his termination without the need for any additional consideration by either side. Accordingly, Ramsey's continued exercise of his separate duty under the confidentiality provision could not and did not extend the terms of the Employment Agreement.

> **b.    Moreover, the Employment Agreement actually contained no express obligation not to disclose confidential information.**

Sheet Pile's argument contains another glaring flaw: The Employment Agreement contained no express provision prohibiting Ramsey from disclosing Sheet Pile's confidential information.[13] ROA.452-56. The Employment Agreement provides the following regarding confidential information:

> Employee agrees that he is being provided with highly confidential, trade secret, and proprietary information from Employer and that access to such confidential, trade secret, and proprietary information would not be provided without this non-competition agreement. In addition, Employee agrees that he could not do his job without access to this confidential, trade secret, and proprietary information.

ROA. 452-54.

---

[13] The Employment Agreement is specifically defined in the Jury Charge as the employment agreement entered by Ramsey and Sheet Pile on August 27, 2019. ROA.1966. The Jury Charge references no other employment agreement, and Sheet Pile never objected to the exclusion of any alleged informal, unsigned, or oral employment agreements. Nor does Sheet Pile make any such challenge on appeal. As such, any alleged breaches by Ramsey of any pre-2019 agreement were not before the Jury and could not be factored in the Jury's verdict. ROA.568-69, 1966.

While the Employment Agreement acknowledges that Ramsey is receiving confidential information necessary to do his job, it stops short of foreclosing his disclosure of that information. As such, Ramsey's efforts to maintain the confidentiality of Sheet Pile's information could not be considered continued performance under the Employment Agreement. Ramsey testified that he did not receive any additional confidential information from Sheet Pile after signing the Employment Agreement. ROA.2903-04, 3470-71. Ramsey worked for Sheet Pile and had access to its confidential information for six and a half years before signing the Employment Agreement. ROA.2904-05, 3469-70.

As Ramsey explained, he believed he had a duty to maintain the confidentiality of Sheet Pile's information outside of any contractual obligation. ROA.3468-69, 3604-05. Ramsey's belief that he had a separate duty to maintain confidential information apart from his contractual obligations conforms to well-established Texas law. An employee owes a common law duty "not to use confidential or proprietary information acquired during the relationship adversely to his employer." *Anderson Chem. Co., Inc. v. Green*, 66 S.W.3d 43, 442 (Tex. App.—Amarillo 2001, no pet. hist.). "[A]nd that obligation survives the termination of employment." *Id.* Ramsey's duty to protect the confidentiality of Sheet Pile's information is a separate obligation that persists independently of the Employment Agreement's terms concerning employment performance. As such, Ramsey's

45

fulfillment of that duty does not equate to continued performance of the employment contract itself. Sheet Pile cites no authority to disturb Texas law recognizing a duty not to disclose confidential information as a separate duty from any contractual obligation. Sheet-Pile-Brief at 26-28.

> **D.    Sheet Pile's no-evidence attack on the prior material breach instruction and the Jury's finding of the same fails: Ample evidence supported the Jury's finding that Sheet Pile committed a prior material breach.**

As discussed above, Sheet Pile's only preserved objection to the prior material breach instruction and Question 12 is its legal sufficiency challenge: That no evidence supports the instruction. *Supra*, ARGUMENT § II(B).

> **1.    Federal Rule of Civil Procedure 50(a)-(b) governs legal sufficiency challenges.**

Legal sufficiency challenges are preserved by filing a motion for judgment as a matter of law ("JMOL") at the close of evidence. FED. R. CIV. P. 50(a); *Seibert v. Jackson Cty., Miss.*, 851 F.3d 430, 434 (5th Cir. 2017). Federal Rule of Civil Procedure 50(a) ("Rule 50(a)") requires that a JMOL motion "specify the judgment sought and the law and facts that entitle the movant to the judgment." FED. R. CIV. P. 50(a)(2). If the movant fails to prevail on its Rule 50(a) motion, it must renew its motion after the jury renders its verdict to preserve error under Federal Rule of Civil Procedure 50(b) ("Rule 50(b)"). *Dupree v. Younger*, 598 U.S. 732 (2023) (citing FED. R. CIV. P. 50(b)). The Rule 50(b) motion must assert the same grounds as the

46

Rule 50(a) motion: A party waives any new arguments made for the first time in the Rule 50(b) motion. *McCann v. Tex. City Ref., Inc.*, 984 F.2d 667, 672 (5th Cir. 1993).

Here, Sheet Pile never filed a Rule 50(a) motion asserting insufficiency arguments regarding prior material breach.[14] Sheet Pile therefore waived these arguments. And Sheet Pile did not remedy that error by objecting to Question 12 on no-evidence grounds at the jury charge conference. Sheet Pile failed to identify "the law and facts" that entitle it to its requested judgment—omitting Question 12 from the Jury Charge. FED. R. CIV. P. 50(a)(2). As such, Sheet Pile did not preserve its sufficiency of the evidence objection to Question 12 as required under Rule 50.

The Fifth Circuit applies a plain error standard to sufficiency of the evidence challenges where the movant failed to comply with Rule 50. *Rodriguez v. McMullen*, No. 21-40593, 2023 WL 2890167 at *1 (5th Cir. Apr. 11, 2023). Accordingly, this Court would reverse the District Court's judgment "only if the judgment complained of results in a 'manifest miscarriage of justice.'" *Id.* (internal quotations and citation omitted). On plain error review, the only question before the court is whether there was **any** evidence supporting the jury verdict." *Id.* ("If *any* evidence supports the jury verdict, the verdict will be upheld.") (quoting *U.S. ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 964 (5th Cir. 1998) (emphasis in original).

---

[14] Sheet Pile's only Rule 50(a) motion addressed Ramsey's fraud claims and the economic loss rule only. ROA.18, 1869-74, 1948-52.

> **2.** **More than sufficient evidence supports the Jury's finding that Sheet Pile committed a prior material breach of the Employment Agreement.**

The Jury found that Sheet Pile breached the Employment Agreement by failing to pay Ramsey his final $5,000.00 paycheck. ROA.1975-76. Sheet Pile's payment was due on January 10, 2020, to compensate Ramsey for his work from December 16th through 30th, 2019. ROA.3023. Sheet Pile does not challenge this finding by the Jury. Sheet-Pile-Brief at 1-38. Nor does Sheet Pile argue it failed to pay Ramsey this amount.[15] *Id.*

The Jury also found that Ramsey breached the Employment Agreement. ROA.1966, 1979. The Jury determined, however, that Sheet Pile's "previous failure to comply with a material obligation of the same agreement" excused Ramsey's breach. ROA.1966, 1979. The Jury's prior material breach finding means the Jury determined that Sheet Pile's breach—failure to pay Ramsey on January 10, 2020—occurred before Ramsey's breach. The only breaches Sheet Pile alleged against Ramsey occurring after Sheet Pile's breach on January 10, 2020 are:

- Failing to return Sheet Pile's property under Section 5(d) of the Employment Agreement and

- Violating the Employment Agreement's non-compete provision.

---

[15] In fact, Wendt admitted at trial that Sheet Pile withheld Ramsey's final $5,000.00 paycheck. ROA.3196.

ROA.943-44. As such, the Jury must have found that Ramsey breached the Employment Agreement in one of these two ways.[16]

Sheet Pile also alleged that Ramsey breached the Employment Agreement by failing to perform his duties and mismanaging Sheet Pile's finances. ROA.565-68. Both of these alleged breaches involve Ramsey's performance of his duties as Sheet Pile's CFO. ROA.56-68. Ramsey could not possibly have committed any of these alleged breaches after Sheet Pile failed to pay Ramsey his final $5,000 paycheck. Sheet Pile's final payment was due on January 10, 2020, after it terminated Ramsey's employment. ROA.2898, 3023. As such, Sheet Pile's failure to pay Ramsey could not be considered a prior material breach of any of these alleged breaches by Ramsey. The Jury had ample evidence to support its finding that Ramsey did not breach his employment duties while working for Sheet Pile. ROA.2876-77, 2883, 2899, 3152-53.

The Jury heard testimony from Ramsey that Sheet Pile, through its attorney, terminated Ramsey's employment effective December 31, 2019. ROA.2866, 2898-99, 2902, 3096. Ramsey testified at length that he performed his duties for Sheet Pile without ceasing through December 30, 2019.[17] ROA.2899, 2947-48, 2984-85. The

---

[16] The Jury's verdict does not expressly state the basis on which the Jury found Ramsey breached the Employment Agreement. ROA.1979.

[17] Ramsey's Sheet Pile email was cut off on December 18, 2019, but Ramsey continued to conduct Sheet Pile business. ROA.2899, 2947-48, 2984-86.

undisputed evidence shows that Sheet Pile never paid Ramsey his final $5,000 paycheck for work performed from December 16 through 30th, 2019. ROA.3023.

The evidence further establishes that after Sheet Pile failed to pay Ramsey his final paycheck on the required date, Ramsey:

- Met with Sheet Pile's attorney and turned over "all records, notes, files, keys, credit cards, blank checks, et cetera," as Sheet Pile requested; (ROA.3097, Ramsey testifying he met with Sheet Pile's attorney on January 13th or 14th, 2020 and returned Sheet Pile's property);

- Formed Lone Star Global, a management consulting company, on January 17, 2020 (ROA.3204-05);

- First discussed with Humphrey Chang—after Chang approached him—the possibility of Ramsey working with Chang's company, SteelWall (ROA.3222, Ramsey testifying Chang first approached him in early February 2020); (ROA.3262, Chang testified he first contacted Ramsey about hiring him in February 2020).

Because the Jury's finding of prior material breach was supported by record evidence, Sheet Pile's insufficiency of the evidence challenge fails. *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 700 (5th Cir. 2012) (finding appellee's testimony regarding where he stood when accident occurred was sufficient evidence supporting jury's refusal to find contributory negligence).

Even if Sheet Pile did not waive its legal sufficiency arguments—it did—the District Court correctly entered Judgment on the Jury's Question 12 finding. For cases where a party preserves their arguments on JMOL, the Fifth Circuit draws: "[A]ll reasonable inferences and [resolve] all credibility determinations in the light most favorable to the non-moving party[.]" *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 365 (5th Cir. 2002) (internal quotations omitted). And the court must not reverse unless "no reasonable jury could have arrived at the verdict." *Id.* (internal quotations omitted). As set forth above, the Jury heard ample evidence supporting its finding:

- Ramsey fulfilled his Employment Agreement duties while employed by Sheet Pile (ROA.2876-77, 2883, 2899, 3152-53);

- Sheet Pile terminated Ramsey effective December 31, 2019, and Ramsey continued his work for Sheet Pile through that date (ROA.2899, 2947-48, 2984-85);

- Sheet Pile owed Ramsey $5,000, due January 10, 2020, for his work performed December 16th through 30th, but never paid him (ROA.2899, 2947-48, 2984-85, 3023);

- Ramsey's purported breach of the Employment Agreement did not occur until after Sheet Pile failed to give him his final paycheck (ROA.3097, 3204-05, 3222).

Given this evidence, a reasonable jury could reasonably conclude that Sheet Pile committed a prior material breach of the Employment Agreement that excused Ramsey's subsequent breach. The District Court's Final Judgment should therefore be affirmed.

**III.  The Evidence Supports The Jury's Finding That Sheet Pile Suffered Zero Dollars In Damages From Ramsey's Purported Breach of the Employment Agreement (Responsive to Issue Three).**

Sheet Pile claims the evidence does not support the Jury's zero-dollar-damages finding. Sheet-Pile-Brief at 28-29. Sheet Pile argues it produced conclusive evidence of a "bare minimum of $900,000" in damages. *Id.* at 31. Sheet Pile requests this Court render judgment on Sheet Pile's breach of contract claim with a $900,000 award in its favor. *Id.* at 37. Alternatively, Sheet Pile asks for a new trial on damages. *Id.* at 38. There are multiple flaws in Sheet Pile's appellate requests; this Court should not disturb the Jury's zero-dollar damages finding.

**A.  The Seventh Amendment prohibits Sheet Pile's requested rendition of damages.**

"It is well established that the Seventh Amendment prohibits a federal court from using additur to increase the damages awarded by the jury." *Matheny v. Chavez*, 593 Fed. Appx. 306, 309 (5th Cir. 2014) (internal quotations omitted); *see also Jones v. Bratton*, 39 F.3d 320, 2 (5th Cir. 1994) (per curiam) (stating same). Thus, the Seventh Amendment flatly prohibits Sheet Pile's request that this Court render an award of $900,000 in its favor. *Jones*, 39 F.3d at 2.

The "rule against additur is not violated in a case where the jury ha[s] properly determined liability and there is no valid dispute as to the amount of damages." *Roman*, 691 F.3d at 702 (internal quotations omitted). However, Sheet Pile does not fall into this narrow exception. The Jury found Sheet Pile's prior material breach of the Employment Agreement precluded damages (if any) on its breach of contract claim. *Supra*, ARGUMENT § II(D)(2). The Jury also inferentially found that Ramsey committed no breaches before his termination. *Id.* Finally, there is a valid dispute for damages. While Sheet Pile claims it is entitled to damages as a matter of law under *Ragsdale v. Progressive Voters League*,[18] Ramsey thoroughly rebutted Sheet Pile's "uncontroverted" evidence of damages at trial. *Infra*, ARGUMENT § III(B) (explaining Ramsey's rebuttal of Sheet Pile's evidence of damages). Accordingly, this Court (or the District Court) cannot "render" a damages award of $900,000 in favor of Sheet Pile. *Jones*, 39 F.3d at 2; *Roman*, 691 F.3d at 702.

**B.    The Jury's zero-dollar finding is well-founded: This Court should not entertain Sheet Pile's request for a new trial on breach of contract damages.**

Because the Seventh Amendment precludes this Court from rendering a judgment increasing damages, Sheet Pile's complaint here is reduced to its request for a new trial on damages. However, this Court should affirm the District Court's denial of a new trial.

---

[18] 801 S.W.2d 880 (Tex. 1990).

**1.　This Court reviews a District Court's denial of a motion for a new trial for an abuse of discretion using Texas law.**

This Court reviews a District Court's grant or denial of a new trial for an abuse of discretion. *Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 273 (5th Cir. 2019). "The size of the award to which a plaintiff is entitled is generally a fact question." *Wackman v. Rubsamen*, 602 F.3d 391, 404 (5th Cir. 2010). This Court should be "exceedingly hesitant to overturn the decision of the jury—the primary fact finder—and the trial judge who entered judgment on the verdict." *Id.*

Texas law applies in determining if a new trial is necessary. *Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012). Under Texas law, a court may grant a motion for a new trial "when the damages are manifestly too small or too large." *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 305 (Tex. 2023) (quoting TEX. R. CIV. P. 320). The court can only grant a new trial when "no rational jury could have exercised its discretion as" the jury did. *Id.*

When the movant challenges the factual sufficiency of the Jury's verdict in a motion for a new trial, the reviewing court should use a factual sufficiency standard to review the trial court's grant or denial of the motion. *In re Pantalion*, 575 S.W.3d 382, 383-84 (Tex. App.—Beaumont 2019, no pet.) (orig. proceeding). Under a factual sufficiency review, the reviewing court will "review the entire record in a neutral light and set aside the trial court's ruling only where it rests on evidence so

weak or the finding is so contrary to the great weight and preponderance of the evidence that it shocks the conscience or is manifestly unjust." *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 171 (Tex. App.—El Paso 2014, pet. denied); *see also Dow Chem. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (stating same). "Evidence is factually sufficient to support the jury's verdict if the evidence is such that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn therefrom." *In re Zimmer, Inc.*, 451 S.W.3d 893, 906 (Tex. App.—Dallas 2014, no pet.) (orig. proceeding).

### 2.   The evidence overwhelmingly supports the Jury's verdict.

Sheet Pile claims it presented evidence of around $900,000 in "undisputed" damages due to Ramsey's purported breach. Sheet-Pile-Brief at 29. However, the evidence easily supports the Jury's conclusion of not awarding damages.

### a.   The evidence supports the Jury's zero-dollar award for Ramsey's purported failures in maintaining Sheet Pile's books.

The Jury could have correctly found that Sheet Pile's accounting expert—Ellen Minteer—was not a credible witness. At the trial, she was currently employed by Sheet Pile to recreate its 2020 books and had been filing its tax returns in the years immediately before trial. ROA.3355-56.

Minteer also rebutted her own testimony. Minteer testified that someone other than Ramsey "finished out" the 2019 books after Sheet Pile terminated him.

ROA.3359. Minteer testified there was another person responsible for the 2019 and 2020 books until Sheet Pile hired her in September 2021. ROA.3355, 59, 61-63, 66-67. Minteer could not recall that person's name and role with Sheet Pile. ROA.3359. From this, the Jury could have concluded that someone else—not Ramsey—failed to keep proper 2019 and 2020 books.

Minteer also undercut Sheet Pile's assertion that Ramsey is responsible for its ***2020 books***. Minteer unequivocally stated that Ramsey ***was not responsible*** for keeping Sheet Pile's 2020 books. ROA.3367. Minteer complained that much information was missing from the 2020 books but confirmed that the missing documentation was not Ramsey's fault. ROA.3369. This is sensible because Sheet Pile did not employ Ramsey in 2020. ROA.2899. The Employment Agreement did not contain a provision for Ramsey to maintain Sheet Pile's books after his termination. ROA.3903-06.

Additionally, Minteer's testimony is consistent with the Jury's prior material breach finding. The Jury found Sheet Pile first breached the Employment Agreement by not paying Ramsey in January 2020. *Supra,* ARGUMENT § II(D). So, even if Ramsey is somehow responsible for Sheet Pile's 2020 books, the Jury's prior material breach finding precludes damages for Ramsey's purported failure to properly maintain Sheet Pile's 2020 books. *Id.*; *see also* ROA.1966 (Court's charge

56

instructing Jury on prior material breach). From this, the Jury correctly concluded Ramsey is not liable for purported damages to Sheet Pile's 2020 books.

Finally, the Jury was free to believe Ramsey's ***own expert CPA***. Ramsey tendered CPA and forensic accounting expert—Mike Turner—to rebut Minteer. ROA.3707. Turner testified that Minteer failed to properly research and investigate Sheet Pile's financial records. ROA.3709-11. Turner claimed this made her expert opinions inadequate. ROA.3709. The Jury was free to believe Turner's criticism of Minteer's opinions.

> **b.    The evidence supports the Jury's zero-dollar award for the confidential information, training, and "insight" Sheet Pile provided to Ramsey.**

Sheet Pile claims it presented conclusive evidence that it "had expended at least $90,000" in training, "insight," and confidential information that Ramsey took to Steel Wall. Sheet-Pile-Brief at 29. However, the evidence overwhelmingly justifies the Jury not awarding $90,000 in damages for this purported breach.

The Jury reasonably concluded Sheet Pile committed a prior material breach of the Employment Agreement before Ramsey started working with Steel Wall. As discussed above, Sheet Pile's prior material breach precludes an award of any damages. *Supra*, ARGUMENT § II(D). Sheet Pile claims it is entitled to damages because Ramsey took training and confidential information to Steel Wall. Sheet-Pile-Brief at 29. However, Ramsey started working with Steel Wall ***after*** Sheet Pile

57

breached the Employment Agreement. *Id.* Thus, Sheet Pile could not have incurred these purported damages until after Ramsey started working with Steel Wall ***after*** Sheet Pile's prior breach.

Additionally, the Jury was free to believe that Ramsey had no duty to return any additional confidential information[19] or compensate Sheet Pile for its training and "insight" it provided to Ramsey. The District Court charged the Jury with determining damages (if any) that may flow from Ramsey's breach of the Employment Agreement. ROA.1966, 1979-80. The Employment Agreement does not mention that Sheet Pile must provide "training" or "insight" to Ramsey. ROA.3903-06. There is likewise no mention that Ramsey must compensate Sheet Pile for anything. *Id.* Similarly, no prohibition stops Ramsey from using confidential information after his termination. *Id.* In fact, the only confidentiality duty the Employment Agreement imposes on Ramsey prohibits him from disclosing the "terms of" to third parties. ROA.3905. Accordingly, the Jury was free to find that Ramsey owed no damages to Sheet Pile for these purported breaches.

---

[19] Ramsey still returned all Sheet Pile documents, electronic files, and property in his possession after Terrazas terminated him. ROA.3096-97.

### c.    The evidence supports the Jury's zero-dollar award for Sheet Pile's lost revenue.

Finally, Sheet Pile claims that Ramsey's purported breaches caused it to lose $750,000 in revenues. Sheet-Pile-Brief at 29. However, the Jury was justified in finding that Ramsey owed Sheet Pile nothing for this purported breach.

Again, the Jury found that Sheet Pile had committed a prior material breach of the Employment Agreement—Sheet Pile breached before Ramsey supposedly breached. ROA.1979. Thus, the Jury found Ramsey did not breach the Employment Agreement before January 10, 2020. This finding precludes the Jury from awarding any damages to Sheet Pile for any breach Sheet Pile alleged Ramsey committed that occurred prior to January 10, 2020. *Id.* Accordingly, the Jury was entitled to award no damages to Sheet Pile.

Alternatively, the evidence thoroughly rebuts Sheet Pile's claim that it lost $750,000 in revenue because of Ramsey's purported breaches.[20] Wendt testified that Steel Wall had tried to use Sheet Pile's methods years before Ramsey joined. ROA.3685. Wendt's testimony also betrays Sheet Pile's assertion that it "lost significant business from long-time customers." Sheet-Pile-Brief at 29. Sheet Pile cites Wendt's testimony that Sheet Pile lost out on jobs to Steel Wall costing $649,500 to $647,000 (***not $750,000***). *Id.*; ROA.3629-30, 3677-82. Wendt later

---

[20] Indeed, Wendt testified that his gross sales ***increased*** from 2019 to 2020 and from 2020 to 2021, after Ramsey left. ROA.2800-01.

testifies that one of these long-term customers (Roll Form) *still purchases from Sheet Pile*. ROA.3690-91. Wendt also clarified that a $607,500 job he claims Ramsey caused Sheet Pile to lose was an open bid to multiple third parties, including Sheet Pile. ROA.3692. Wendt further testified there was no exclusivity agreement between Sheet Pile and the two customers Ramsey purportedly caused Sheet Pile to lose. ROA.3690-92.

### d.　The evidence supporting the Jury's zero-dollar finding is not factually insufficient.

The evidence supporting the zero-dollar finding is certainly not weak. Sheet Pile's owner and expert contradict and rebut their own testimony on damages from Ramsey's purported breaches. Additionally, Ramsey offered expert accounting testimony undercutting Sheet Pile's accounting expert. So, the evidence is not so weak as to be factually insufficient under Texas law to permit a new trial. *Victory Energy Corp.*, 461 S.W.3d at 171.

Additionally, the Jury's finding is not against the great weight and preponderance of the evidence as to be unjust or to shock the conscience. Sheet Pile claims its proof of damages from Ramsey's breaches is "uncontroverted." Sheet-Pile-Brief at 30. Sheet Pile also claims that Ramsey failed to present evidence to "contradict [its] testimony and documentary evidence" of damages. *Id*. However, as shown above, the record patently refutes this assertion. *Supra*, ARGUMENT §III(B). The evidence detailed above shows that the Jury's zero-dollar finding is not against

60

the great weight and preponderance of the evidence: an abundance of evidence supports that finding. *Victory Energy Corp.*, 461 S.W.3d at 171. Accordingly, the Jury's zero-dollar finding is supported by factually sufficient evidence, and the District Court was correct in denying Sheet Pile's motion for a new trial. *In re Rudolph Auto., LLC*, 674 S.W.3d at 305.

### C.   *Ragsdale* has no application to Sheet Pile's arguments.

*Ragsdale* states:

> [When] the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, ***direct*** and positive, and ***free from contradiction***, ***inaccuracies, and circumstances tending to cast suspicion thereon***, it is taken as true, as a matter of law.

801 S.W.2d at 882 (emphasis added). Sheet Pile claims its witnesses' testimony and exhibits presented at trial meet the threshold for truth "as a matter of law." Sheet-Pile-Brief at 30-31. Sheet Pile bases this on its ***uncited*** assertion that Ramsey "failed to present any countermeasures to [Sheet Pile's] damages [evidence] whatsoever." *Id.* at 30.

The record confirms, however, that the evidence Sheet Pile relies upon to establish damages is, among other things, contradicted, inaccurate, not credible, and rebutted by other witnesses. *Supra*, ARGUMENT § III(B)(2). Because of this, *Ragsdale* has no application here. *Ragsdale*, 801 S.W.2d at 882.

61

Additionally, the facts of *Ragsdale* only support not applying the cherry-picked quote in the present case. In *Ragsdale*, the Texas Supreme Court explained: "[W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." *Id.* The supreme court clarified that uncontradicted evidence still raises a fact issue if "is unreasonable, incredible or its belief is questionable . . . ." *Id.* And in *Ragsdale*, the testimony addressed simply the amount of attorneys' fees incurred to obtain an injunction—limited testimony that was never rebutted. *Id.* (Texas Supreme Court rendered $22,500 award in attorneys' fees). Sheet Pile's presentation of lost profits and other economic damages evidence is far too dissimilar to justify using *Ragsdale*'s presumption in the present case.

The Jury's zero-damages finding is correct; even more, it is supported by factually sufficient evidence. The District Court's Final Judgment awarding Sheet Pile zero damages for any breach should be affirmed.

## IV.　The District Court Did Not Abuse Its Discretion In Refusing Sheet Pile's Request For A Permanent Injunction (Responsive to Issue Four).

Sheet Pile argues the District Court erred by denying its requested permanent injunction, ostensibly designed to stop Ramsey's future disclosure of Sheet Pile's confidential information. Sheet-Pile-Brief at 31-37. Yet, Sheet Pile has failed to provide a shred of evidence indicating an imminent threat of future disclosure by Ramsey of Sheet Pile's confidential information. Even Wendt himself admitted

under oath, "I don't have any evidence," when asked what evidence he had that Ramsey stole trade secrets from him. ROA.2810. Sheet Pile lacks a primary element of permanent injunctive relief. *Sec. & Exch. Comm'n v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978) (finding district court abused its discretion in issuing permanent injunction where nothing in record suggested defendant would again violate Securities Exchange Act).

The District Court wisely exercised its discretion to deny Sheet Pile's request for permanent injunction.[21] *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court."). "[I]t is clear injunctions are an extraordinary remedy, to be granted only when a party with injury for which he cannot obtain a sufficient legal remedy." *DSC Comm. Corp. v. Next Level Comm.*, 107 F.3d 322, 328 (5th Cir. 1997). As such, the Fifth Circuit reviews denials of permanent injunctive relief for abuse of discretion, examining whether the district court:

- Relied on clearly erroneous factual findings;

- Relied on erroneous conclusions of law; or

---

[21] The District Court also (correctly) denied Sheet Pile's related application for temporary injunction. The District Court declined to find that the "broadly defined confidential, proprietary, and trade secret information claimed by Sheet Pile" warranted trade secret protection. ROA.971, 985-86. Sheet Pile never re-urged its application and does not allege error in the District Court's refusal to grant trade secret protection. ROA.2747; Sheet-Pile-Brief at 1-39.

- Misapplied the factual or legal conclusions when denying the injunctive relief.

*Peaches Entm't Corp. v. Entm't Repertoire Assoc., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995). The District Court did not abuse its discretion in deciding Sheet Pile was not entitled to permanent injunctive relief.

To establish entitlement to a permanent injunction, Sheet Pile was required to show:

- An actual success on the merits;

- A substantial threat of immediate and irreparable harm for which it has no adequate remedy at law;

- That greater injury will result from denying the injunction than from its being granted; and

- That an injunction will not disserve the public interest.

*Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820, 837 (S.D. Tex. 2023) (internal citation, quotation marks, and brackets omitted).

Sheet Pile claims it satisfied the first element of injunctive relief because the Jury found Ramsey retained confidential information in breach of the Employment Agreement. Sheet-Pile-Brief at 32-33. Sheet Pile cites snippets of Ramsey's testimony, which Sheet Pile claims show Ramsey still has confidential Sheet Pile information. *Id.* at 31-32, 34. Sheet Pile's snippets prove nothing. Just because

64

Ramsey may have confidential information belonging to Sheet Pile does not in any way indicate he intends to disclose such information. Employees learn confidential information about their employer by virtue of their employment, and that knowledge does not vanish once the job terminates. *See* ROA.2904-05 (Ramsey testifying he had confidential Sheet Pile information necessary to perform his job for six and a half years before signing the Employment Agreement), ROA.3285 (Chang's testimony that one does not simply forget confidential information once they leave their employment), 3468-70 (Ramsey explaining his duty to retain the confidentiality of Sheet Pile information was independent of any contractual duty), 3604-05 (same). There is zero evidence to suggest that Ramsey poses any threat to Sheet Pile of future disclosure of its information.

Sheet Pile attempts to create such a threat: Sheet Pile claims Ramsey disclosed confidential Sheet Pile information to Daniel Marley, a former employee of Wendt's entities, and insinuates Ramsey will do it again.[22] ROA.35-36. Sheet Pile's argument stems from the attorneys' fee affidavit and supporting documents submitted by Ramsey's attorney after trial. Sheet-Pile-Brief at 35. These documents identify Marley as a paralegal who "[r]eview[ed], sort[ed], organiz[ed], and summariz[ed] discovery responses by Sheet Pile." ROA.2033. Sheet Pile attempts to drum up a

---

[22] Sheet Pile does not address the possibility that Marley could have already obtained confidential Sheet Pile information through his former employment by a Wendt entity.

nefarious scheme, claiming Marley met with one of Ramsey's clients, Chang, "just months before trial." Sheet-Pile-Brief at 35. In fact, Marley met with Chang approximately seven to nine months before trial for a beer, and they did not discuss business. ROA.2214-15, 17-19.

The District Court found that "Sheet Pile's proposed inference—that Marley disclosed trade secrets to SteelWall—is insufficient to warrant an injunction." ROA.2748. Sheet Pile's application for permanent injunction was missing a crucial link:

> The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.

*Blatt*, 583 F.2d at 1334 (finding district court abused its discretion in issuing permanent injunction because record did not suggest defendant would repeat alleged wrongful conduct). To obtain injunctive relief, Sheet Pile must offer positive proof of the likelihood that the wrongdoing will recur. *Id.* The District Court found that Sheet Pile offered no such proof:

> Ramsey has been employed with Steel-Wall for approximately two years and Sheet Pile has offered no evidence of his disclosure or likely disclosure of its alleged trade secrets.

ROA.2748-49. Indeed, Sheet Pile's entire basis for seeking a permanent injunction is alleged past disclosures of confidential information. Sheet-Pile-Brief at 31-37.

66

That is not enough. *Blatt*, 583 F.2d at 1334 (explaining party seeking injunctive relief "needs to go beyond the mere fact of past violations.").

Sheet Pile failed to establish one of the necessary elements for obtaining injunctive relief. As such, the District Court did not abuse its discretion in denying Sheet Pile's application for a permanent injunction.

## CONCLUSION

The Jury's verdict must be respected, and the District Court's Final Judgment upholding the Jury's findings should be affirmed.

The District Court's Final Judgment correctly awards Ramsey prejudgment interest for two distinct injuries—one based on contract and one based in equity. Accordingly, the $160,878.47 award to Ramsey for damages and prejudgment interest arising from Sheet Pile's breach of the Promissory Note/Security Agreement and for damages arising from Sheet Pile's breach of the Employment Agreement should be affirmed.

Further, the Jury properly found that Sheet Pile committed a prior material breach of the Employment Agreement, excusing any alleged breach by Ramsey. The Jury also correctly found that Sheet Pile suffered zero dollars in damages from Ramsey's alleged (and excused) breach of the Employment Agreement. Lastly, the District Court did not abuse its discretion in denying Sheet Pile's unsupported request for a permanent injunction.

Ramsey respectfully requests that this Court affirm the District Court's Final Judgment in its entirety.

Respectfully Submitted,

**SANTOYO WEHMEYER P.C.**

By: */s/ Renée A. Yanta*
    Renée A. Yanta
    State Bar No. 00787483
    *ryanta@swenergylaw.com*
    Emily A. Gearhart
    State Bar No. 24065871
    *egearhart@swenergylaw.com*
    R. William Whitmer
    State Bar No. 24125456
    *wwhitmer@swenergylaw.com*
    12400 San Pedro Avenue, Suite 300
    San Antonio, Texas 78216
    Telephone: (210) 998-4200
    Facsimile: (210) 998-4201

    **ATTORNEYS FOR PLAINTIFF-APPELLEE DOUGLAS RAMSEY**

**CERTIFICATE OF SERVICE**

I, Renée A. Yanta, hereby certify that on August 1, 2024, I electronically filed the foregoing Principal Brief of Plaintiff-Appellee Douglas Ramsey with the Clerk of Court using the CM/ECF filing system, which will automatically send notification of the filing to all counsel of record in this appeal.

*/s/ Renée A. Yanta*
Renée A. Yanta

**CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Appellate Procedure 32(a), counsel for Plaintiff-Appellee, Douglas Ramsey, hereby certifies as follows:

1.     This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,660 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally-spaced typeface, including serifs, using Microsoft Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Microsoft Word in Times New Roman 12-point font.

SO CERTIFIED, this 1st day of August, 2024.

*/s/ Renée A. Yanta*
Renée A. Yanta
Attorney of Record for
Plaintiff-Appellee Douglas Ramsey